IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>GEORGE ANTHONY HARRIS,<br><br>　　　　　　　Defendant. | CR 25-60-BLG-SPW<br><br>ORDER ON DEFENDANT'S<br>MOTION TO SUPPRESS |

Before the Court is Defendant George Anthony Harris's Motion to Suppress. (Doc. 22). Harris is charged with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 2). Harris seeks to suppress evidence of the firearm, ammunition, scale, and methamphetamine forming the basis of his charge, arguing that law enforcement lacked reasonable suspicion to search his vehicle. (Doc. 23 at 6–8). He alternatively seeks to suppress the evidence on the grounds that law enforcement's search cannot be justified as a search incident to arrest. (*Id.* at 8–9). The Government opposes the Motion. (Doc. 26).

The Court held a hearing on November 14, 2025, during which Yellowstone County Sheriff's Office Deputy Harrison Gillen and Montana Probation and Parole Officers Heather Ledger and Andrew Laux testified.

For the following reasons, the Court denies the Motion.

1

I.   **Background**

On June 10, 2024, Harris appeared before the Montana Thirteenth Judicial District Court, Yellowstone County, for sentencing on a single felony count for criminal possession of dangerous drugs. (Doc. 23-2 at 2). Judge Brett D. Linneweber imposed a deferred sentence of three years, to run concurrently with Harris's Rosebud County case. (*Id.*). Relevant to this case is Condition 8 of Harris's deferred sentence:

> Upon reasonable suspicion that the Defendant has violated the conditions of supervision, a Probation and Parole Officer may search the person, vehicle, and residence of the Defendant, and the Defendant must submit to such search. A Probation and Parole Officer may authorize a law enforcement agency to conduct a search, provided the Probation and Parole Officer determines reasonable suspicion exists that the Defendant has violated the conditions of supervision.

(*Id.* at 3).

In addition to the conditions imposed by Judge Linneweber, Montana Department of Corrections issued conditions of supervision including:

> **Illegal Drug Use:** I will not possess or use illegal drugs. I will not be in control of or under the influence of illegal drugs, nor will I have in my possession any drug paraphernalia.
>
> . . . .
>
> **Absconding:** The Defendant shall not abscond from supervision. Absconding is a non-compliance violation as defined in § 46-23-1001(1), MCA.

(Doc. 26-2 at 2–3).

2

One month after Harris received his deferred sentence, he met with his supervising probation officer, Andrew Laux. Officer Laux collected Harris's urinalysis sample which returned as positive for methamphetamine. (Doc. 26-3 at 5). Harris remained on supervision through August 29, 2024, when he failed to report to Officer Laux for a scheduled meeting. (*Id.*). Several days later, Officer Laux called Harris, but all known phone numbers were disconnected. (*Id.* at 4–5). Officer Laux then sent a letter to Harris with reporting instructions and attempted to make contact on October 24, 2024. No contact was made. Harris eventually called Officer Laux on October 28 but then failed to report as instructed on October 31.

Based on the positive methamphetamine test and Harris's failure to report as instructed, Officer Laux applied for a warrant for Harris's arrest for violating the conditions of his supervision. The warrant was issued on November 14, 2024. (*Id.* at 4; Doc. 23-2 at 7). Harris's whereabouts remained unknown until Deputy Harrison Gillen effectuated a traffic stop on March 26, 2025.

That evening, Harris was driving a blue Chevrolet Camaro on I-90 outside of Billings, Montana. While on patrol, Deputy Gillen ran a routine check of the Camaro's license plates and discovered that the plates belonged to a maroon 2018 Chevrolet Colorado. (Doc. 26 at 4). Deputy Gillen activated his lights and initiated the stop.

Once the vehicle was pulled over, Deputy Gillen shined his spotlight on the Camaro, approached the driver's side, and made contact with Harris. (*Id.*). Deputy Gillen noticed that Harris looked "downwards" and "subtly [made] frantic and otherwise sporadic movements." (Doc. 26-4 at 5). There was a passenger in the front seat, and according to Deputy Gillen's testimony, he noticed "pock marks" on Harris's and the passenger's faces and saw butane torches scattered on the floorboards of the vehicle.

Deputy Gillen asked for Harris's license, registration, and insurance. Harris responded that he was unlicensed and that he had just purchased the vehicle from his cousin. (Doc. 26 at 4-5; Doc. 23 at 2). After asking Harris to spell his full name, Deputy Gillen returned to his patrol vehicle to perform a records check and run the Camaro's VIN. (Doc. 26 at 5).

Deputy Gillen confirmed that Harris had a suspended driver's license and then discovered he was on Montana State Probation and had a warrant out for his arrest for violating the conditions of his probation. (*Id.*). While he ran the records check, Deputy Gillen saw Harris moving around in the vehicle. (*Id.*).

After Deputy Gillen completed the records check, he asked Harris to place his hands outside of the driver's window. Harris complied while Deputy Gillen again approached the Camaro, and this time, ordered Harris out of the vehicle. Deputy Gillen placed Harris in handcuffs and arrested him without incident. Harris was

frisked for weapons and escorted to the front of the patrol vehicle by a second officer. (Doc. 23 at 2-3). There, Deputy Gillen read Harris his *Miranda* rights and questioned him about his drug use, probationary status, and whether he had firearms in the vehicle. (Doc. 24 at 14:10–16:11). Harris confirmed he was on felony probation, acknowledged that the warrant for his arrest was due to his probation violations, and stated there were no firearms in the vehicle. (Doc. 26-4 at 7; Doc. 24 at 14:25–16:11). Deputy Gillen requested Harris's permission to search the Camaro; Harris denied consent. (Doc. 23 at 3).

Thereafter, Deputy Gillen called Montana Probation and Parole. The on-call officer, Heather Ledger, answered the phone. Deputy Gillen provided her with a summary of the incident, informing her that Harris was driving without license and seemed "pretty nervous." (Doc. 24 at 19:48–20:00).

At the hearing, Officer Ledger testified that while speaking with Deputy Gillen on the phone, she reviewed Harris's Chronological Notes compiled by Officer Laux. (*See* Doc. 26-3). Based on the Notes, she saw that Harris had tested positive for methamphetamine on July 10, 2024, and had a warrant out for his arrest. (*Id.* at 4–5). She also saw that Harris had not been in contact with Officer Laux since July 2024 and therefore inferred Harris had absconded from supervision.[1] Ultimately,

---

[1] Officer Laux testified at the hearing that he had not heard from or seen Harris since July 2024.

Officer Ledger authorized a search of the Camaro on behalf of Probation and Parole. (Doc. 25 at 5; Doc. 24 at 20:00–20:13).

Deputy Gillen searched the vehicle and retrieved a silver and black Taurus G3 9mm semi-automatic pistol, ammunition, a digital scale, and methamphetamine. (Doc. 26 at 5; Doc. 23 at 3).

## II.  Legal Standard

A defendant may challenge the admissibility of evidence prior to trial under Federal Rule of Criminal Procedure 12(b)(3)(C), which governs motions to suppress evidence. The foundation for such challenges lies in the Fourth Amendment, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

"In order to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, [the United States Supreme] Court . . . conferred upon defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial evidence which had been secured by means of an unlawful search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968) (citing *Weeks v. United States*, 232 U.S. 383 (1914)).

When law enforcement violates a defendant's Fourth Amendment rights, the exclusionary rule mandates that "all evidence seized as a result of the [violation] must be suppressed as the fruit of the poisonous tree." *United States v. Morales*, 252

6

F.3d 1070, 1073 (9th Cir. 2001). A defendant has the ultimate burden of proof on a Fourth Amendment motion to suppress. *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005).

### III. Analysis

Harris first argues the evidence must be suppressed because his nervous behavior, facial pock marks, and movement inside the vehicle did not give Deputy Gillen reasonable suspicion to perform a search. (Doc. 23 at 6). Harris next argues the search cannot be justified as a search incident to arrest because there was no actual or continual threat to officer safety or need to preserve evidence. (*Id.* at 8).

Harris misapplies the facts to the law in this case. As the Court will show, Deputy Gillen's search of Harris's vehicle was a lawful probationary search because Probation Officer Ledger had reasonable suspicion that Harris was in violation of his conditions of supervision. Because the probationary search was lawful, the Court does not reach the merits of Harris's second argument and denies the Motion.

Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One exception is when law enforcement's "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (internal quotation marks and citation

omitted). Supervising probationers is considered a "special need" which permits "a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Id.* at 875. This is because the restrictions on probationers are intended to provide "a period of genuine rehabilitation," whereby "the exercise of supervision" is required and justified "to assure that the restrictions are in fact observed." *Id.* Thus, probation and parole searches are permissible when conducted pursuant to state law that satisfies the reasonableness of the Fourth Amendment. *United States v. Conway*, 122 F.3d 841, 842 (9th Cir. 1997). The "reasonableness standard balances the special law enforcement needs supporting the state law scheme against the probationer's privacy interests." *Id.*

In Montana, a probation officer may search a probationer's person, vehicle, and residence "[u]pon reasonable suspicion that the offender has violated the conditions of supervision." Mont. Admin. R. 20.7.1101(6); *Montana v. Conley*, 415 P.3d 473, 476 (Mont. 2018). This standard, also known as "reasonable cause" or "reasonable grounds," is "substantially less than the probable cause standard required by the Fourth Amendment because of the probationer's diminished expectation of privacy." *Montana v. Moody*, 148 P.3d 662, 665 (Mont. 2006). "[A] probation officer is granted a 'degree of flexibility' to determine how to exercise his or her supervisory powers." *Conley*, 415 P.3d at 476 (quoting *Montana v. Burke*, 766 P.2d 254, 256 (Mont. 1988)).

8

Here, Condition 8 of Harris's deferred sentence reflects Montana's reasonable grounds standard and required Harris to submit to a search of his vehicle if a probation officer had reasonable grounds to believe he was violating the terms of his probation. The undisputed facts are that Harris violated his terms of probation by testing positive for methamphetamine and otherwise absconding supervision by failing to report to his probation officer for over two months. Indeed, a warrant for Harris's arrest had been issued for violating the terms of his probation. Based on these recorded violations, Officer Ledger had sufficient reasonable suspicion that Harris violated the conditions of his supervision and was therefore permitted to authorize Deputy Gillen to search Harris's vehicle. (*See* Doc. 23-2 at 3 ("A Probation and Parole Officer may authorize a law enforcement agency to conduct a search . . . .")).

Accordingly, the probationary search was lawful and Harris's Fourth Amendment rights, as a probationer, were not violated.

IV. **Conclusion**

IT IS HEREBY ORDERED that Defendant George Anthony Harris's Motion to Suppress Evidence (Doc. 22) is DENIED.

DATED this 17th day of November, 2025.

SUSAN P. WATTERS
United States District Judge